**IN THE COURT OF APPEALS OF IOWA**

No. 24-1852
Filed October 1, 2025

JOHN REISDORF,
          Plaintiff-Appellant,

vs.

EMILY POLING,
          Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, Jeffrey C. McDaniel,

Judge.


        A grandfather appeals the denial of his petition for grandparent visitation

rights.  **AFFIRMED.**


        Jack E. Dusthimer, Davenport, for appellant.

        Robert S. Gallagher of Gallagher, Millage & Gallagher, P.L.C., Bettendorf,

for appellee.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

John Reisdorf argues he met all statutory requirements that would allow him to exercise grandparent visitation under Iowa Code chapter 600C (2023). He appeals the district court's decision that he did not.

John's biological son, Michael Dumerauf, had two children with Emily Poling: H.D (born in 2017) and C.D. (born in 2018). After his son died in July 2021, John sought visitation rights with his grandchildren. The district court weighed the rebuttable presumption that "a fit parent's decision to deny visitation to a grandparent . . . is in the best interest of a minor child" against John's burden to show otherwise and determined that John failed to meet that burden. Iowa Code § 600C.1(2). We agree that John did not meet the high burden to overcome the presumption that Emily's decision was in the best interests of John's grandchildren.

**Facts and Procedural History.**

In August 2023, John petitioned for grandparent rights under chapter 600C after Emily did not disclose where she was living and cut off all previously scheduled visitations between John and the children. John maintained that he had frequent contact with the children both before and after his son's death. When Emily was pregnant with her second child and Michael was incarcerated, she and the oldest child lived with John for a "couple of months" in 2017. Emily testified that she moved away to her mother's home "due to seeing things and not feeling comfortable." When Michael was released from incarceration, the couple and their children lived in one of John's houses for seven months; Emily and the children remained in the home for another two months after Michael died. John testified for about a year or two following Michael's death, he saw the children on

Wednesdays around 8:00 p.m. before their 9:00 p.m. bedtime. But Emily and her new husband testified that it was only for three to four months before there was a communication breakdown and visits ceased. Emily also testified that after that "communication" breakdown, John was frustrated about not seeing the children and he threatened to come to the children's school or her new husband's work.

Around March 2023, Emily and her new husband moved and she did not tell John where she was living, so all communication, including visitations, ceased. At the time of trial, she and John lived about thirty minutes apart in the same county. But before that, frustrated by the lack of contact, John filed for grandparent visitation in August. Pending trial, he and Emily worked out a temporary stipulation where, starting in February 2024, he would have supervised visits on the second Sunday of every month for two hours. When he was over thirty minutes late to the August visitation, Emily discontinued the visits, citing the part of the agreement that allowed her to terminate visits if John missed a visit without reasonable notice or excuse. They did not communicate after that point.

At the September trial, both John and Emily testified. Emily also called her new husband and her sister as witnesses. The district court found that John had not met his burden to rebut the presumption that Emily's decision was in the children's best interests. John appeals.

**Standard of Review.**

"We review the district court's denial of grandparent visitation de novo." *Clausen v. Clausen*, No. 14-0630, 2014 WL 7343458, at *3 (Iowa Ct. App. Dec. 24, 2014). "We give weight to the fact findings of the juvenile court, especially

regarding the credibility of witnesses, but [we] are not bound by them." *In re K.R.*, 537 N.W.2d 774, 776 (Iowa 1995).

**Discussion.**

Because grandparents had no common law rights to visitation, *see id.*, our legislature decided to allow grandparents a path to petition for visitation of their grandchildren when "the parent of the minor child, who is the child of the grandparent . . . is deceased," Iowa Code § 600C.1(1). But, "[a] rebuttable presumption arises that a fit parent's decision to deny visitation to a grandparent . . . is in the best interest of . . . minor child[ren]." *Id.* § 600C.1(2). To decide if that presumption has been rebutted, the district court is required to find the grandparent proved all of the following elements by clear and convincing evidence:

> a. It is in the best interest of the child to grant such visitation.
> b. The grandparent . . . has established a substantial relationship with the child prior to the filing of the petition.
> c. That the presumption that the parent who is being asked to temporarily relinquish care, custody, and control of the child to provide visitation is fit to make the decision regarding visitation is overcome by demonstrating one of the following:
> (1) The parent is unfit to make such decision.
> (2) The parent's judgment has been impaired and the relative benefit to the child of granting visitation greatly outweighs any effect on the parent-child relationship. Impaired judgment of a parent may be evidenced by any of, but not limited to, the following [enumerated conditions].[1]

*Id.* § 600C.1(3).

After hearing the evidence at trial, the district court concluded:

---

[1] At trial, Emily's counsel went through the enumerated conditions related to the parent's impairment, and John admitted Emily did not fall under any of them and did not raise any of the conditions to attack the presumption. So, we do not list them here.

John did not prove by clear and convincing evidence that grandparent visitation: (1) was in the best interest of the children; (2) there was a legally "substantial relationship" between himself and grandchildren; and (3) either (a) Emily was unfit to make such a visitation decision, or (b) Emily's judgment was impaired and the benefit to the child of grandparent visitation exceeds the effect on the parent-child relationship.

While the district court denied John's request for grandparent rights, it emphasized that Emily would be the decision-maker as to any future contact, leaving the chance that there may be contact down the road. The district court noted: "This is not to say John is unworthy of some form of visitation with his grandchildren. Under these facts, however, this Court is statutorily constrained to reserve that visitation decision to Emily rather than prescribing grandparent visitation in the form of a court order."

Starting with the last element John was required to prove, that Emily was either unfit or impaired in her decision-making, as noted above John made no mention at trial related to any of the enumerated elements of impairment. And no one contested that Emily was a "fit parent." In fact, John described Emily as a "good parent." Thus, because John failed to rebut the presumption involving Emily's decision, which was one of the three elements he had to address under the statute, we find the petition was appropriately dismissed. *See Clausen*, 2014 WL 7343458, at *4 (finding "resolution of this issue [the presumption] is dispositive, we do not need to consider whether a substantial relationship between [the grandparent] and the grandchildren exists nor whether it is in the best interests of the children to award [grandparent] visitation").

**Conclusion.**

Given the standard requiring clear and convincing evidence, we agree that John did not meet his burden to overcome the presumption that Emily acted in the best interests of the children in limiting and then denying him visits with the grandchildren. We affirm the denial of his petition for grandparent visitation.

**AFFIRMED.**